UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
LYNDA M. FREGO,

                Plaintiff,

-against-

PAROLE OFFICER F. KELSICK and
SENIOR PAROLE OFFICER
SENZAMICI,

                Defendants.
----------------------------------------------------------X

**ORDER**
11-CV-5462(SJF)(SIL)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   JAN 2 3 2015   ★ 

LONG ISLAND OFFICE

FEUERSTEIN, J.

*Pro se* Plaintiff Lynda M. Frego ("Frego" or "plaintiff") commenced this action against defendants Parole Officer F. Kelsick and Senior Parole Officer Senzamici (collectively, "defendants"), under 42 U.S.C. § 1983 ("Section 1983") alleging that defendants "conducted an unwarranted search of [her] residence" and that "she was physically restrained under excessive force." [Case No. 12-civ-1028, Docket Entry No. 1 (the "Complaint" or "Compl.") ¶ IV]. By order dated June 11, 2012, the Court dismissed Frego's claims against defendant New York State Department of Corrections and Community Supervision and consolidated Frego's case with a suit by Frego's husband, Troy Wallace, arising from the same incident, under docket number 11-5462. [Docket Entry No. 18].

On June 7, 2012 and July 26, 2012, Defendants moved to dismiss the Frego and the Wallace complaints. [Docket Entry Nos. 16, 27]. On December 21, 2012, this Court adopted the Report and Recommendation issued by Magistrate Judge William D. Wall [Docket Entry No. 34 (the "Wall Report")] in its entirety, granting defendants' motion to dismiss the Wallace complaint in its entirety, denying leave to replead, and granting defendants' motion to dismiss

the Frego complaint with prejudice except with respect to Frego's Fourth Amendment claims. [Docket Entry No. 35 (the "December 21, 2012 Order")]. On April 11, 2014, defendants filed a motion for summary judgment on plaintiff's Fourth Amendment claim, which plaintiff opposed. [Docket Entry No. 65].

Now before the Court is the Report and Recommendation of Magistrate Judge Steven I. Locke dated November 10, 2014, that defendants' motion for summary judgment be granted as to plaintiff's Fourth Amendment unlawful search claim and denied as to plaintiff's excessive force claim. [Docket Entry No. 76 (the "Report")].[1] Defendants filed objections to Report on November 11, 2014 [Docket Entry No. 77 (Def. Obj.")], and plaintiff filed objections to the Report on December 8, 2014 [Docket Entry No. 80 ("Pl. Obj.")]. The Court has fully considered the submissions made by defendants and plaintiff, and plaintiff's *pro se* status.[2] For the reasons that follow, the Court adopts the Report in its entirety.

I.   Standard of Review

Rule 72 of the Federal Rules of Civil Procedure permits a magistrate judge to conduct proceedings of dispositive pretrial matters without the consent of the parties. Fed. R. Civ. P. 72(b). Any portion of a report and recommendation on dispositive matters to which a timely objection has been made is reviewed *de novo*. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). However, "when a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report strictly for clear error." *Frankel v. City of*

---

[1] The facts underlying this action are set forth in the Report and are hereby incorporated by reference. *See* Report, at 1-5.

[2] Generally, a court should construe submissions by pro se plaintiffs liberally and "interpret them to raise the strongest arguments that they suggest." *Scott v. Rock*, 2013 WL 360398 (E.D.N.Y. Jan. 30, 2013) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

*N.Y.*, Nos. 06-civ-5450, 07-civ-3436, 2009 WL 465645, at *2 (S.D.N.Y. Feb. 25, 2009); *see also Butto v. Collecto, Inc.*, 290 F.R.D. 372, 379 (E.D.N.Y.2013) ("In a case where a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." (quotations and citation omitted)). The Court is not required to review the factual findings or legal conclusions of the magistrate judge as to which no proper objections are made. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). To accept the report and recommendation of a magistrate judge on a dispositive matter to which no timely objection has been made, the district judge need only be satisfied that there is no clear error on the face of the record. *See* Fed. R. Civ. P. 72(b); *Johnson v. Goord*, 487 F. Supp. 2d 377, 379 (S.D.N.Y. 2007), *aff'd*, 305 F. App'x 815 (2d Cir. Jan. 9, 2009); *Baptichon v. Nev. State Bank*, 304 F. Supp. 2d 451, 453 (E.D.N.Y. 2004), *aff'd*, 125 F. App'x 374 (2d Cir. Apr. 13, 2005). Whether or not proper objections have been filed, the district judge may, after review, accept, reject, or modify any of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

II. Discussion

    A. Plaintiff's Objections to the Report

Plaintiff objects to the Report's findings that: (1) "defendants' search of plaintiff's home was justified under the circumstances and therefore did not violate Plaintiff's constitutional rights;" and (2) "defendants are entitled to qualified immunity." Pl. Obj., at 1. Plaintiff's first objection is misplaced given that Judge Locke specifically stated he was "not reach[ing] a determination on [the] issue" of "whether under these circumstances Defendants had sufficient basis to justify a warrantless search" given that the Report recommended "summary judgment be granted with respect to Plaintiff's unreasonable search claim on qualified immunity grounds."

3

Report, at 11. Plaintiff's second objection to the Report claims that defendants are not entitled to qualified immunity because "[t]heir conduct has seriously and clearly violated the basic tenets of Plaintiff's constitutional rights (to be free from unreasonable search and seizure) of which a reasonable person would have known" and because "defendants knew that they were not complying with a law because as the parole contract shows, Mr. Wallace's residence was not the residence searched unlawfully." Pl. Obj., at 5. The Court, upon *de novo* review, finds that defendants are entitled to qualified immunity because it was objectively reasonable for them to believe that a warrantless search of plaintiff's home was lawful.[3]

"Under the doctrine of qualified immunity, a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate clearly established rights or if it would have been objectively reasonable for the official to believe his conduct did not violate plaintiff's rights." *Reuland v. Hynes*, 460 F.3d 409, 419 (2d Cir. 2006). "The relevant question...is...whether a reasonable officer could have believed [the] warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see also Castro v. United States*, 34 F.3d 106, 112 (2d Cir. 1994) ("Officials are entitled to qualified immunity when their decision was *reasonable,* even if mistaken." (emphasis in original, internal citations omitted)); *accord Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (stating that federal officials are shielded by qualified

---

[3] While it is not necessary to resolve the parties' dispute as to whether defendants were personally involved in the search, in any event, plaintiff herself testified that she "can't be sure" whether Officer Kelsick or Officer Senzamici searched her home. [Docket Entry No. 65-7 (Declaration of Toni E. Logue, Ex. 1 ("Frego Dep."), at 80-81)].

immunity from mere mistakes in judgment regardless of whether the mistake is one of fact or law).

"Under New York law, the issue of whether a warrantless parole search is 'unreasonable and thus prohibited by constitutional proscription...turn[s] on whether the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty.'" *Rivera v. Madan*, No. 10-civ-4136, 2013 WL 4860116, at *5 (S.D.N.Y. Sept. 12, 2013) (quoting *People v. Huntley*, 43 N.Y.2d 175, 181, 401 N.Y.S.2d 31, 371 N.E.2d 794 (1977)). The Second Circuit has held that this "New York rule [that a warrantless parole search is permissible so long as it is reasonably related to the parole officer's duties] is coextensive with the requirements of the Fourth Amendment...because the doctrine of "special needs," permits those searches that are reasonably related to the special needs animated by management of a parole system." *United States v. Grimes*, 225 F.3d 254, 259 n.4 (2d Cir. 2000) (internal citations omitted). As the Second Circuit has repeatedly held, a parole officer's duties include "investigat[ing] whether a parolee is violating the conditions of his parole." *United States v. Barner*, 666 F.3d 79, 85 (2d Cir. 2012) (citing *United States v. Reyes*, 283 F.3d 446, 459 (2d Cir. 2002)). Therefore, "so long as the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty, a warrantless search of the residence of a parolee is generally reasonable under the Fourth Amendment" (*United States v. Perkins*, No. 12-cr-6006L, 2013 WL 6145753, at *5 (W.D.N.Y. Nov. 21, 2013) (internal citations omitted)), even after the parolee is placed under arrest for the parole violation. *See Barner*, 666 F.3d at 85-86 (concluding that "the parole officers having placed [parolee] under arrest for a parole violation, earlier that same day, did not render the search [of his residence] unreasonable" because "[a] parole officer's duty to

investigate violations of parole does not vanish the moment a defendant is taken into custody for a violation.").

A review of the information possessed by defendants at the time of the purported search demonstrates that it was objectively reasonable for them to believe that the search of plaintiff's home was lawful because they believed it was Mr. Wallace's residence and that a minor was present in the home. As part of the conditions of his release, Mr. Wallace permitted "the search of inspection of [his] person, residence and property." [Docket Entry No. 65-4 (Affidavit of Vincent Senzamici ("Sen. Aff.")); Docket Entry No. 65-5, Sen. Aff., Ex. A)]. Given Mr. Wallace's failure to report to his assigned housing upon release from custody (Sen. Aff., Exs. D-F.), defendants' surveillance of plaintiff's residence and conversation with plaintiff's neighbor who informed them that Mr. Wallace came and went from plaintiff's residence, parole officers' observation of male clothing in plaintiff's home through the windows and the fact that Mr. Wallace was apprehended and arrested at plaintiff's home, it was reasonable for defendants to believe that plaintiff's home was Mr. Wallace's residence. Pl. Rule 56.1 Stmt. ¶¶ 11-13, 25-26, 29-30; Sen. Aff. ¶¶ 8-9, 15-16, Kel. Aff. ¶¶ 6-7, 13-15.[4] *See United States v. Viserto*, 391 F. App'x 932, 934 (2d Cir. 2010) (holding that, among other things, an informant's tip to officers that recently absconded parolee was residing at his wife's house and the fact that parolee had

---

[4] Even if defendants had been mistaken in their belief that plaintiff's home was Mr. Wallace's residence, which, according to plaintiff's deposition, they were not (*see* Frego Dep. 38-39 (testifying that at the time of the search, Mr. Wallace had been living with her for approximately three days)), because their belief was reasonable, they would still be entitled to qualified immunity. *See Moore v. Vega*, 371 F.3d 110, 117 (2d Cir. 2004) ("Defendants believed they were entering the residence of an absconded parolee. If such belief was reasonable, qualified immunity protects them from liability, even if that belief was mistaken.").

abandoned his last known residence was "sufficient to support a reasonable belief that, at the time of the [search], [parolee] was again residing with his wife").

Additionally, it is undisputed that plaintiff told defendants, prior to the search, "that [her] daughter was downstairs." Frego Dep., at 76; Sem. Aff. ¶ 14; Kel. Aff. ¶ 12. Therefore, it was reasonable for the officers to believe a minor was present in plaintiff's home, in violation of Mr. Wallace's conditions of release which permitted him to "only have contact with any minor children in common with Linda Fregoe Wallace with approval and supervision of a Family Court Order or with the permission of the P.O." and to "have no contact with any person under the age of eighteen, without the written permission of the P.O." Sen. Aff., Ex. A. Defendant Senzamici's "order to clear the residence to see if anyone else was inside…which took no longer than two minutes" (Pl. Rule 56.1 Stmt. ¶ 31; Sen. Aff. ¶ 17) and his "belie[f] that they had probable cause to enter the residence to do a visual inspection to make sure the daughter was safe and to confirm that there were no other individuals, particularly other minors in the house" (Pl. Rule 56.1 Stmt. ¶ 30; Sen. Aff. ¶ 17), was objectively reasonable and rationally related to defendants' duties as parole officers in light of the information defendants possessed at the time and the clearly established caselaw permitting warrantless searches of parolees' residences to further investigate suspected parole violations.[5]

---

[5] *See United States v. Ramos*, 685 F.3d 120, 129 & n.6 (2d Cir. 2012) (parole officers' warrantless search of parolee's home was consistent with the Fourth Amendment because it was permitted by the conditions of his parole, and "justified by the need to investigate whether [parolee] had committed any new parole violations"); *United States v. Newton*, 369 F.3d 659, 666 (2d Cir. 2004) (once parole officers received information that parolee had a firearm, it "was a reasonable exercise of their parole duty to search [parole mother's] apartment [where parolee resided] both to detect the possession of the firearm in violation of [parolee's] parole and to protect [the mother] and her husband"); *United States v. Quinones*, 457 F. App'x 68, 70 (2d Cir. 2012) (warrantless search of residence defendant shared with his girlfriend did not violate Fourth Amendment "where the parole officer had reason to suspect not only that [parolee] was violating the terms of his parole, but also that he was engaged in criminal activity"); *Viserto*, 391 F. App'x at 932 (entry into parolee's wife's home solely on the basis of a parole warrant was valid); *U.S. v. Santalucia*, 666 F. Supp. 2d 268, 272 (N.D.N.Y. 2009) (search of parolee's mother's house when arresting parolee on a parole warrant was permissible under Fourth Amendment as "rationally and

Based upon the foregoing, plaintiff's objections are overruled and defendants are entitled to qualified immunity for the search conducted at plaintiff's home.

B.  Defendants' Objections to the Report

Defendants object to the Report's finding that plaintiff's complaint sets forth a viable excessive force claim and that "there is a genuine issue of material fact as to whether Defendants used excessive force under the circumstances." Report, at 14; *see also* Def. Obj., at 1. Defendants argue that they moved for summary judgment *only* on plaintiff's improper search claim because that was plaintiff's only Fourth Amendment claim which survived the December 21, 2012 Order, which defendants argue "did not mention any claim of excessive force." Def. Obj., at 3. The Wall Report, adopted in its entirety by this Court, recommended "that Frego's Fourth Amendment claim not be dismissed" (Wall Report, at 12), and described plaintiff's Fourth Amendment claims as claims "that the defendants improperly entered and searched her home" (*id.*, at 9) and "that she was physically restrained under excessive force." *Id.*, at 10-11. The Court thus finds that plaintiff has alleged an excessive force claim which survived the December 21, 2012 Order.

Defendants also urge dismissal of plaintiff's excessive force claim because "it was reasonable for officers to use *de minimis* force pushing the door open in order to allow them to conduct the warrantless search" (Def. Obj., at 6), and because plaintiff "has failed to demonstrate that she sustained any physical injury as a result of the search of her home on September 16, 2011." *Id.*, at 7. Given the allegations that plaintiff was "physically restrained under excessive

---

reasonably related to his duty…to investigate [Defendant's] parole violation"); *U.S. v. White*, 622 F. Supp. 2d 34 (S.D.N.Y. 2008) (parole officer's search of apartment in which parolee was an overnight guest was "was rationally and reasonably related to [the parole officer's] duties" where an arrest warrant had been issued for parolee, parolee had absconded, his "presence at the [searched] apartment was in itself a separate violation of his parole" and parole officer had received information that parolee was in the apartment and had articulable suspicion that drugs were present in the apartment).

force" (Compl. ¶ IV), that defendants "use[d] brute force to push the interior open and shove [plaintiff] back into the livingroom" [Docket Entry No. 65-10 ("Wallace Aff.") ¶ 10], that plaintiff "suffered physical, mental and emotional pain and suffering which includes but not limited to…as yet undetermined injuries" (Compl. ¶ IV), and the fact that plaintiff seeks compensation for her "medical bills" (*id.* ¶ V), defendants' request to dismiss plaintiff's excessive force claim is denied; however their request to formally move for summary judgment on that claim (Def. Obj., at 8) is granted.

III. Conclusion

For the foregoing reasons, plaintiff's and defendants' objections are overruled and the Report is adopted in its entirety. Summary judgment motions on plaintiff's excessive force claim are due on or before February 27, 2015, any opposition is due on or before March 13, 2015 and any reply is due on or before March 20, 2015. The pretrial conference scheduled before the undersigned on January 29, 2015 is hereby adjourned to September 10, 2015 at 11:15 am.

**SO ORDERED.**

s/ Sandra J. Feuerstein
───────────────────────
Sandra J. Feuerstein
United States District Judge

Dated: January 23, 2015
      Central Islip, New York